909 A.2d 1254

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Chaka MATTHEW, Appellant.**

Supreme Court of Pennsylvania.

Argued April 3, 2006.

Decided Nov. 22, 2006.

Donald Chisholm, II, Esq., for Chaka Matthew.

Hugh J. Burns, Esq., Jason E. Fetterman, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice EAKIN.

At approximately 4:30 a.m., October 19, 2001, appellant was installing carpets at a Nine West shoe store in the Franklin Mills Mall. An argument ensued between appellant and his supervisor, which culminated in security guard Dwayne O'Brien escorting appellant to his car. When the men arrived at the car, O'Brien noticed a number of Nine West shoe boxes in the car. O'Brien asked if appellant had receipts for the shoes; appellant pushed O'Brien and got into the car. O'Brien sprayed appellant with pepper spray. Appellant hit O'Brien with his car and fled the scene. O'Brien sustained injuries to his knee, shin, and thumb.

Minutes later, appellant lost control of his car on Interstate 95 and crashed. Passerby George Wachter saw the crash and, to his subsequent chagrin, stopped his car to aid appellant, who was lying unconscious in the car that was now on fire. Wachter pulled appellant from the car, then struck him in the chest and yelled at him in an attempt to awake him. When appellant awoke, he pushed Wachter and asked if he was a "f—cking cop?" *Commonwealth v. Matthews*, 870 A.2d 924, 926 (Pa.Super.2005)[1]. Wachter said he was only there to help him. Appellant was agitated, continued to question Wachter, and eventually pushed a loaded gun against Wachter's throat. Appellant removed the gun from Wachter's throat to rummage through his burning car, but continued to point the gun at Wachter. After gathering a few items from the car, appellant ran to a guardrail approximately 20 yards from the car, then ran back to the car and frantically searched it again. Appellant periodically pointed the gun at Wachter, and when a second passerby stopped at the scene, appellant yelled at Wachter, "Mother f—cker, you're f—cking dead. I'm going to

---

[1]. The Superior Court's opinion refers to appellant as "Matthews." A review of the record, including appellant's brief, reveals appellant's last name is "Matthew."

f—cking kill you." *Id.*, at 927. Appellant ran to the guard-rail, leapt over it, and fled.

The Commonwealth charged appellant with, among other things, retail theft, theft by unlawful taking, and receiving stolen property[2] as a result of his theft from the Nine West store. The Commonwealth charged appellant with aggravated assault graded as a second degree felony, simple assault, and possessing an instrument of crime (PIC)[3] as a result of his scuffle with O'Brien. The Commonwealth charged appellant with aggravated assault graded as a first degree felony, simple assault, terroristic threats, PIC, and weapons violations[4] stemming from his thankless interaction with samaritan Wachter. The trial court convicted appellant on all charges.

The Superior Court, sitting *en banc*, affirmed appellant's judgment of sentence with the exception of certain indefinite suspended sentences.[5] The Superior Court followed *Commonwealth v. Gruff*, 822 A.2d 773 (Pa.Super.2003), and applied a totality of circumstances test to determine if there was sufficient evidence for the fact-finder to determine appellant's actions constituted aggravated assault graded as a first degree felony. *Matthews*, at 932. The Superior Court rejected *Commonwealth v. Mayo*, 272 Pa.Super. 115, 414 A.2d 696 (1979), characterizing *Mayo* as standing for the proposition that the Commonwealth cannot establish intent to inflict serious bodily injury, an element of aggravated assault graded as a first degree felony, if the defendant had ample opportunity to inflict the injury but did not inflict it. *Matthews*, at 932–33.

We granted allowance of appeal to determine:

Whether the Commonwealth offered sufficient evidence to convict [appellant] of aggravated assault, graded as a felony

2. 18 Pa.C.S. §§ 3929, 3921, 3925.

3. 18 Pa.C.S. §§ 2702, 2701, 907.

4. 18 Pa.C.S. §§ 2702(a)(1), 2701, 2706, 907, 6106, 6108.

5. The trial court imposed suspended sentences for theft by unlawful taking, PIC (O'Brien), PIC (Wachter), and carrying a firearm on a public street. *Matthews*, at 933–34. The Superior Court found these indefinitely suspended sentences were illegal. *Id.*, at 934. The legality of these sentences is not before this Court.

of the first degree. In doing so, discuss the competing approaches contained in ... [*Mayo* and *Gruff*] and which approach, or other approach, should be adopted as the law of the Commonwealth with respect to this issue.

*Commonwealth v. Matthew*, 584 Pa. 436, 884 A.2d 248, 248 (2005).

In reviewing a sufficiency challenge, a court determines, whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 535 (2006); *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1281 (2005). In this sufficiency challenge we are asked to determine what constitutes aggravated assault under 18 Pa.C.S. § 2702(a)(1). Thus, this is a question of law. *Commonwealth v. Weston*, 561 Pa. 199, 749 A.2d 458, 460 n. 8 (2000). For questions of law, our scope of review is plenary and our standard of review is *de novo*. *Craley v. State Farm Fire and Casualty Company*, 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006).

A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887, 889 (1978).

■ "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result...." 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Gruff,* at 776 (quoting *Commonwealth v. Roche,* 783 A.2d 766, 769 (Pa.Super.2001)). The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. *Commonwealth v. Hall,* 574 Pa. 233, 830 A.2d 537, 542 (2003).

*Alexander* created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander,* at 889. *Alexander* made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault. All we hold is that the evidence in the instant case is insufficient to support such a finding." *Id.,* at 889–90.

Appellant argues the Commonwealth failed to establish he possessed the specific intent to inflict serious bodily injury upon Wachter or that he took a substantial step toward inflicting such an injury. The Commonwealth argues where a defendant states his intent to kill another and places a loaded gun against another's throat, the fact-finder may conclude the defendant intended to commit serious bodily injury and took a substantial step toward that goal.

The Superior Court incorrectly concluded *Mayo* and *Gruff* illustrate "two distinct and irreconcilable approaches" towards interpreting what is required to be proven for aggravated

assault. *Matthews*, at 930. In *Mayo*, the Superior Court held there was insufficient evidence for the fact-finder to convict the defendant of aggravated assault under § 2702(a)(4)[6] where the defendant placed a knife at the victim's throat, suggested he could kill her with it, and inflicted light scratches on the victim's chest that did not draw blood. *Mayo*, at 698, 703–04. *Mayo* referred to *Alexander*, quoting its multi-factor analysis. *Id.*, at 703, 383 A.2d 887 (quoting *Alexander*, at 889). *Mayo* determined that while "[the defendant] was certainly more physically powerful than his victim, and at least suggested the possibility of her death, we view the crucial fact to be his failure to pursue his obvious opportunity to inflict considerable pain or injury on [the victim]." *Id. Mayo* found the defendant's actions "all point decisively to an intent not to inflict bodily injury . . . ." *Id.*

*Mayo* followed the totality of circumstances test set forth in *Alexander*. *Mayo* did not hold the Commonwealth can never establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict the injury, but did not inflict it. *Mayo* only found the defendant's decision not to inflict the bodily injury was the "crucial fact" in that case.[7] Had *Mayo* stated such a sweeping pronouncement, it would have been incorrect, and insofar as it may be interpreted as doing so, it is disapproved.

*Gruff* followed the totality of circumstances test set forth in *Alexander*. *Gruff*, at 776–77. *Gruff* found the evidence sufficient to establish aggravated assault when the defendant placed a bayonet against the victim's neck and expressed an intention to kill the victim, although the defendant did not

---

**6.** A person can also commit aggravated assault if he: "(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon. . . ." 18 Pa.C.S. § 2702(a)(4).

**7.** The Superior Court described *Commonwealth v. Repko*, 817 A.2d 549 (Pa.Super.2003) (verbal and physical action of pointing gun at victim insufficient to establish aggravated assault), as endorsing the *Mayo* "ample opportunity" test. *Matthews*, at 931. *Repko* did not adopt an ample opportunity test, but found the factual scenario before it was more akin to *Mayo* than other case law. *Repko*, at 556.

pursue the victim when the victim escaped after not feeling the bayonet on his neck. *Id.*, at 780.

*Alexander* is controlling on the issue before us, and we hereby re-affirm its pronouncement of a totality of circumstances test. The Superior Court concluded that, to the extent *Mayo* and *Repko* endorsed a finding of insufficient evidence to establish aggravated assault where the defendant does not avail himself of the opportunity to follow through with threats, the approach should be overruled. *Matthews*, at 933. With this disapproval we agree, but as those cases adhere to *Alexander*, there is no need to overrule *Mayo* and *Repko*.

With respect to appellant, the Superior Court properly found there was sufficient evidence to find appellant attempted to inflict serious bodily injury upon Wachter, and intended to do so. Appellant placed a loaded gun against Wachter's throat, repeatedly pointed it at him, and threatened to kill him seven to ten times. Wachter testified he feared for his life. He testified appellant said he was going to kill him seven to ten times. Wachter indicated when appellant turned to look for something in the car, he would try to call 911 but could not speak because he feared appellant would shoot him.

▮ Regarding the attempt element, there was sufficient evidence for the fact-finder to conclude appellant took a substantial step towards inflicting serious bodily injury since he pushed a loaded gun against Wachter's throat, threatened to kill him, and pointed it at him before fleeing the scene. *See Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 186–187 (1993) (substantial step toward inflicting serious bodily injury taken where appellant threatened to shoot victim in head and aimed gun at him before victim wrestled gun from appellant). The only remaining step appellant would have had to take to inflict serious bodily injury upon Wachter would have been to pull the trigger on the gun, which would have obviously caused serious bodily injury. *See* 18 Pa.C.S. § 2301.

▮ Regarding the intent element, there was sufficient evidence for the fact-finder to conclude appellant possessed

the requisite intent to inflict serious bodily injury upon Wachter since he repeatedly threatened to kill Wachter. *See Hall*, at 542 (intent can be found where one verbalizes reasons for his actions). If the threats alone were not enough to establish his intent, the fact-finder could determine his intent from pushing the loaded gun against Wachter's throat and otherwise pointing it at him. *See id.* ("Where the intention of the actor is obvious from the act itself, the [fact-finder] is justified in assigning the intention that is suggested by the conduct." (citation omitted)).

In sum, we re-affirm *Alexander* as the test for determining whether there is sufficient evidence to convict a defendant of aggravated assault graded as a first degree felony. As there was sufficient evidence for the fact-finder to convict appellant of aggravated assault under 18 Pa.C.S. § 2702(a)(1) for his interaction with Wachter, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Chief Justice CAPPY, and Justice CASTILLE, Justice NEWMAN and Justice SAYLOR and BAER join the opinion.

Justice BALDWIN files a dissenting opinion.

Justice BALDWIN, dissenting.

I agree with the majority that the totality of the circumstances test, as set forth in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), is to be applied in this Commonwealth to determine whether a "substantial step," as required in 18 Pa.C.S. § 901(a) to find a defendant is guilty of an attempt, has occurred. The essence of my departure from the majority opinion is the determination of what constitutes such a substantial step, such that the intent to cause **"fear** of imminent serious bodily injury or death" (simple assault, 18 Pa.C.S. § 2701(a)(3)) can be distinguished from the intent to **"cause** serious bodily injury to another," (aggravated assault 18 Pa.C.S. § 2702(a)(1)) beyond a reasonable doubt.

Where a finder of fact is presented with evidence that could support two reasonable conclusions, one of which leads to a

finding of guilty and the other to a finding of not guilty, it is improper for the fact finder, in the absence of additional evidence, to choose the one that implies guilt. Rather, it is the Commonwealth's burden to provide sufficient evidence to support the conviction of the defendant beyond a reasonable doubt. The Appellant claims that the Commonwealth did not provide sufficient evidence to meet its burden, and I agree. *See Commonwealth v. Hall,* 574 Pa. 233, 241, 830 A.2d 537, 541 (2003) ("Viewing the evidence in the light most favorable to the [C]ommonwealth as the verdict winner, and taking all reasonable inferences in favor of the [C]ommonwealth, the reviewing court must determine whether the evidence supports the fact-finder's determination of all of the elements of the crime beyond a reasonable doubt.").

The victim Wachter's testimony in this case was uncontested, thus we review that testimony as true, in order to take the evidence in the light most favorable to the Commonwealth as verdict winner. I am concerned that the fact that the victim in this case was a good Samaritan weighed in the determination of whether the assault committed was more egregious than it would have been had the victim been other than a good Samaritan.[1] At the trial, the victim testified that he witnessed Matthews have a "complete head-on collision with the right side of the guardrail." R. 37. The scene was smoke filled and the car was severely damaged. R. 37–38. The Appellant, Matthews, was unconscious. R. 38. Matthews regained consciousness and pushed a revolver into the victim's throat while asking whether the victim was a police officer. R. 39–40. Appellant searched through the car several times and around areas where the car had been. R. 41–43. Periodically, the

---

1. While there are some types of individuals to whom the aggravated assault statute provides additional protections in the form of higher grades of the offense, good Samaritans are not included in that list. 18 Pa.C.S. § 2702(c). The list includes: police officers, firefighters, probation or parole officers, sheriffs and deputy sheriffs, liquor control enforcement agents, prison employees, judges, members of the attorney generals office, members of the district attorneys office, public defenders, federal, state or local law enforcement officials, emergency medical services personnel, parking enforcement officers, district justices, and public school employees, among others.

Appellant would point the gun at the defendant. R. 41–43. When a third car pulled up, Matthews starting yelling "you're f—ing dead. I'm going to f—ing kill you." and then ran away. R. 43. Matthews never fired the gun, nor did he attempt to fire the gun. Although his conduct was far from that accepted in polite society, according to the victim, Appellant's verbal threats to kill him were far spaced from pushing the gun to the victim's throat and actually came just as the defendant ran away.

The legislature has adopted two separate statutes to punish two different assault-based illegal activities. The first, simple assault, is defined in 18 Pa.C.S. § 2701(a)(3), which provides that "[a] person is guilty of assault if he attempts by physical menace to put another in fear of imminent serious bodily injury." The official comments to that section indicate that "[s]ubsection (a)(3) covers the situation when the actor intends to frighten even though he does not intend, or lacks ability, to commit a battery." The second, aggravated assault, graded as a first degree felony (the type of aggravated assault for which the Appellant was convicted with regard to Wachter, the victim) is defined in 18 Pa.C.S. § 2702(a)(1), which provides that "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

As the majority pointed out, "[a]n attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Op.* at 491, 909 A.2d at 1257 (*citing Alexander*). The majority also correctly cited 18 Pa. C.S. § 302(b)(1)(i) for the proposition that "[a] person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result.…" However, after this, the majority goes on to find that the fact that Appellant pressed the gun into the victim's throat, while asking if the victim was a police officer, and several minutes later threatened to kill the victim before running away is sufficient to infer an intent

498

to cause serious bodily injury. To the contrary, these facts are not sufficient to find that Matthews' conscious object was to inflict serious bodily injury, rather than to cause fear in his victim. The majority notes that Wachter feared for his life. This is exactly the fear that is addressed by the simple assault statute. However, I would note that Wachter's fear is not at issue, as it is the *mens rea* of Matthews that is required to turn simple assault into aggravated assault, not the mental state of the victim.

For the foregoing reasons, I would reverse the Superior Court to the extent that it affirmed the trial court's conviction of attempted first degree aggravated assault in relation to Appellant Matthews' threats against Wachter. In all other respects, I would affirm the Superior Court.