J-S05030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EMOC M. LOPEZ | |
| Appellant | No. 721 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 3, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0004395-201

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                    **FILED:  APRIL 26, 2022**

Appellant, Emoc M. Lopez, appeals from the May 3, 2021 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court"), following his jury conviction for aggravated assault – attempting to cause serious bodily injury – under Section 2702(a)(1) of the Crimes Code, 18 Pa.C.S.A. § 2702(a)(1).  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As summarized by the trial court:

> [Appellant] and [E.L. (the "victim")[1]] had known each other for around 25 years and had been married for approximately five years in July 2017.  In the days leading up to July 22, 2017, the victim found evidence that [Appellant] was cheating on her. [Appellant] also accused [the victim] of cheating on him.  They

---

[1] We redact the victim's full name to protect her identity and privacy.

both agreed not to argue on July 22 as they were having company over, including family and their children.

On July 22, as [the victim] was cooking dinner, [Appellant] arrived home from work, grabbed [the victim's] phone, and started going through it. When [the victim] protested, asking him not to act up in front of the company they had, [Appellant] became upset but left the house when [the victim] asked him to. After he left the house, [Appellant] had a few drinks before returning to the house. Once he returned to the house, [Appellant] started yelling at [the victim] again. He got in her face, insulted her, and accused her of infidelity. [The victim] retreated until she was backed into a wall, then she tried to create distance by pushing [Appellant] away from her. [Appellant] then attacked [the victim], punching her twice in the face. After this initial assault, [the victim] retreated to the bedroom and locked the door to get away from [Appellant]. [Appellant] followed her, broke the door down, and continued hitting [the victim] in the head. [Appellant] bit [the victim] in the arm and on her thigh. He pinned her to the ground and repeatedly punched her in the head. At this point [the victim's] sister, [S.B.], entered the room and pulled [Appellant] off of the victim. [S.B.] subsequently called 911, as did [the victim].

The police responded to the home, but [Appellant] had already left.

    . . . .

The victim also received extensive medical treatment later that day. After little more than four hours in the hospital, it was determined that she suffered "a mild to moderate concussion, abrasions to her forehead, bite marks to left upper arm and left thigh, and a laceration to her right pinky." Her head injuries required stitches, and she continues to suffer migraines. Both of the bite marks she received on her arm and thigh have left permanent scars, and the one on her arm developed a lump. [The victim] has continuing nerve damage from the bites as well, having lost all feeling where the scars are.

Trial Court Opinion, 7/7/21, at 1-2, 6 (record citations omitted). Appellant was charged with aggravated assault. On June 13, 2019, the case proceeded to trial, where Appellant was tried *in absentia*. At trial, evidence was

presented by and/or on behalf of the parties. The court instructed the jury on the elements of aggravated assault and explained that it had to find that Appellant either attempted to cause or caused serious bodily injury to the victim. N.T. Trial, 6/13/19, at 104-06. Thereafter, the jury found Appellant guilty of aggravated assault. The jury specifically found that Appellant did not cause serious bodily injury to the victim, but that he attempted to do so. **Id.** at 115. On May 3, 2021, the trial court sentenced Appellant to five to ten years' imprisonment. Following the denial of post-sentence motion, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues only that the evidence was insufficient to find him guilty of aggravated assault because he did not have the requisite intent to inflict serious bodily injury. Appellant's Brief at 4, 8. Put differently, he claims that he did not attempt to cause serious bodily injury to the victim and that they merely engaged in a mutual scuffle.

A claim challenging the sufficiency of the evidence is a question of law."
**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

> inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

The Crimes Code provides that "[a] person is guilty of aggravated assault if he: (1) *attempts* to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1) (emphasis added). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Additionally, "[f]or aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step towards perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citations omitted), *appeal denied*, 879 A.2d 781 (Pa. 2005). "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). "The intent to cause serious

bodily injury may be proven by direct or circumstantial evidence." ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003).

Here, after careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's sufficiency challenge regarding his conviction for aggravated assault. ***See*** Trial Court Opinion, 7/7/21, at 3-7. The court found:

> From the testimony, the jury could conclude beyond a reasonable doubt that there was no "mutual" scuffle and that there was intent to cause death or serious bodily injury. [Appellant] assaulted [the victim]. After she sought refuge in the bedroom, [Appellant] broke down the door to reach her and continue his assault. The victim defended herself as it was "***fight or die***." The assault continued until the sister of the victim intervened by pulling [Appellant] off the victim while he was in the process of repeatedly and violently punching the victim's head. [The victim] received extensive same-day medical treatment and still has permanent lingering effects from the assault. Without the self-defense of the victim, the interference of her sister, and the prompt and extensive medical treatment, the victim would have incurred serious bodily injury. The violent and repeated blows . . . by [Appellant] upon [the head of the victim], whose physical characteristics could be evaluated by the jury, along with the fact that the attack had to be forcibly stopped, are sufficient to support the jury verdict that [Appellant] had the intent to inflict serious bodily injury on the victim.

***Id.*** at 6-7 (emphasis added). In light of the foregoing, we agree with the trial court's conclusion that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant committed aggravated assault –

attempting to cause serious bodily injury. [2]  We therefore affirm Appellant's May 3, 2021 judgment of sentence.  We further direct that a copy of the trial court's July 7, 2021 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/26/2022

_____

[2] To the extent Appellant points to the record to highlight that the victim weighed 100 pounds more than him for purposes of inviting us to reweigh the evidence in his favor, we decline the invitation.  Appellant's Brief at 13.  It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence.  *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses.  An appellate court cannot substitute its judgment for that for the finder of fact.").

- 6 -

**ORIGINAL**

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
|---|---|
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| | : |
| v. | : NO.: CP-22-CR-0004395-2017 |
| | : |
| EMOC LOPEZ | : |

### MEMORANDUM OPINION

Emoc Lopez (Defendant) was convicted of aggravated assault[1] following a jury trial held on June 13, 2019. Sentencing followed on May 3, 2021.[2] The Defendant filed a post-sentence motion on May 14, 2021, which was denied by the court. The current appeal was timely filed on June 8, 2021. Three days later, the court issued an order directing the Defendant to file a concise statement of errors complained of on appeal, which he did on June 23, 2021. This opinion now addresses the single issue raised in Defendant's concise statement.

Factual Background

The facts of the case are viewed in the light most favorable to the Commonwealth who prevailed at trial. *Commonwealth v. Durie*, 610 Pa. 4, 17 A.3d 919 (2011). With this in mind, the factual background shows that Emoc Lopez and Emily Lopez (Mrs. Lopez) had known each other for around 25 years and had been married for approximately five years in July 2017. (N.T. 6/13/19 p. 33). In the days leading up to July 22, 2017, Mrs. Lopez found evidence that the Defendant was cheating on her. The Defendant also accused Mrs. Lopez of cheating on him. (N.T. 6/13/19 p. 50). They both agreed not to

---

[1] 18 Pa.C.S. § 2702(a)(1)
[2] The Defendant was tried in absentia and was not located until after the trial.

1



45-7

argue on July 22 as they were having company over, including family and their children. (N.T. 6/13/19 p. 35).

On July 22, as Mrs. Lopez was cooking dinner, the Defendant arrived home from work, grabbed Mrs. Lopez's phone, and started going through it. (N.T. 6/13/19 p. 35). When Mrs. Lopez protested, asking him not to act up in front of the company they had, the Defendant became upset but left the house when Mrs. Lopez asked him to. (N.T. 6/13/19 p. 35). After he left the house, the Defendant had a few drinks before returning to the house. (N.T. 6/13/19 p. 51-52). Once he returned to the house, the Defendant started yelling at Mrs. Lopez again. He got in her face, insulted her, and accused her of infidelity. (N.T. 6/13/19 p. 36). Mrs. Lopez retreated until she was backed into a wall, then she tried to create distance by pushing the Defendant away from her. (N.T. 6/13/19 p. 36). The Defendant then attacked Mrs. Lopez, punching her twice in the face. (N.T. 6/13/19 p. 36). After this initial assault, Mrs. Lopez retreated to the bedroom and locked the door to get away from the Defendant. (N.T. 6/13/19 p. 37). The Defendant followed her, broke the door down, and continued hitting Mrs. Lopez in the head. (N.T. 6/13/19 p. 37-38). The Defendant bit Mrs. Lopez in the arm and on her thigh. (N.T. 6/13/19 p. 38). He pinned her to the ground and repeatedly punched her in the head. (N.T. 6/13/19 p. 38). At this point Mrs. Lopez's sister, Samoya Brunelle, entered the room and pulled the Defendant off of the victim. (N.T. 6/13/19 p. 38, 78). Brunelle subsequently called 911, as did Mrs. Lopez. (N.T. 6/13/19 p. 39).

The police responded to the home, but the Defendant had already left. (N.T. 6/13/19 p. 80). He was ultimately tried *in absentia*. After deliberating for slightly more

2

than an hour, the jury found him guilty of aggravated assault by attempting to cause serious bodily injury.

## Issue Raised on Appeal

In his concise statement of errors complained of upon appeal, the Defendant raises a single issue: whether the evidence was sufficient to find that the Defendant had the requisite intent to warrant the jury's verdict of aggravated assault under 18 Pa.C.S. 2702(a)(1).

## Discussion

The evidence presented was sufficient to support the jury's verdict to convict the Defendant of aggravated assault by attempting to cause serious bodily injury. As a general matter, the standard of review of sufficiency claims requires the appellate court to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer,* 876 A.2d 1029, 1032 (Pa.Super.2005). Significantly, the appellate court does not substitute its judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the defendant's convictions will be upheld. *See Brewer,* 876 A.2d at 1032; *Commonwealth v. Stays,* 70 A.3d 1256 (Pa.Super. 2013).

3

The Defendant was convicted under 18 Pa.C.S. § 2702(a)(1), which provides:

A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life.

The statute further defines serious bodily injury as, "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported if the evidence supports a finding of an attempt to cause such injury. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. *Commonwealth v. Matthew,* 589 Pa. 487, 909 A.2d 1254 (2006). "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" *Id.* at 1257–58 (quotation omitted).

Intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct, or attendant circumstances. In his argument, the Defendant maintains that intent cannot be proven as there was a mutual scuffle. However, the test that is used to determine whether the Defendant possessed the intent to inflict serious bodily injury in aggravated assault cases is a totality of the circumstances test, to be used on a case-by-case basis and *for the finder of fact to determine. Commonwealth v. Alexander,* 477 Pa.

4

190, 193, 383 A.2d 887, 889 (1978)(emphasis added). Thus, "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault." *Commonwealth v. Fortune*, 2013 PA Super 134, 68 A.3d 980, 984 (2013).

While the Defendant asserts a lack of intent by arguing that there was a mutual scuffle, the victim testified to escaping his initial assault and retreating to the bedroom, only for the Defendant to break down the door and start repeatedly and violently punching the victim's head. The Defendant's assault only ended when he was restrained by the victim's sister:

> Q.    Can you describe how he hit you.
>
> A.    He punched me. And I picked up a trash can and I hit him with it. And then he took that from me. And at that point, he wrestled—we were wrestling. And he bit me in my arm so I bit him to get off of me because he was biting very hard.
>
> And I don't know how we ended up on the floor. And he bit my leg at that point. And while I was still down, he started punching me in the head and my temple—and that's when my sister came in and pulled him off of me.

(N.T. 6/13/19 p. 37-38)

The victim testified to only defending herself from his blows as he would have injured her further had she not:

> Q.    And you threw a trash can at him?
>
> A.    Yes, ma'am.
>
> Q.    And why would you do that?
>
> A.    I had to get him away from me. I figured that would get him distance, but it didn't.

5

Q.   Did you at any point in time scratch him, hit him, or anything like that while you were on the ground?

A.   Yes.

Q.   Why?

A.   I had to defend myself. I had to fight or else he was going to hurt me more.

(N.T. 6/13/19 p. 38-39)

Later, she characterized her response as "Fight or die pretty much. That's—I felt like it was not going to stop. I had to hit him in order to get him to leave me alone." (N.T. 6/13/19 p. 49).

The victim also received extensive medical treatment later that day. After little more than four hours in the hospital, it was determined that she suffered "a mild to moderate concussion, abrasions to her forehead, bite marks to left upper arm and left thigh, and a laceration to her right pinky." (N.T. 6/13/19 p. 40). Her head injuries required stitches, and she continues to suffer migraines. (N.T. 6/13/19 p. 44). Both of the bite marks she received on her arm and thigh have left permanent scars, and the one on her arm developed a lump. She has continuing nerve damage from the bites as well, having lost all feeling where the scars are. (N.T. 6/13/19 p. 45-47).

From the testimony, the jury could conclude beyond a reasonable doubt that there was no "mutual" scuffle and that there was intent to cause death or serious bodily injury. The Defendant assaulted Mrs. Lopez. After she sought refuge in the bedroom, the Defendant broke down the door to reach her and continue his assault. The victim defended herself as it was "fight or die." The assault continued until the sister of the victim intervened by pulling the Defendant off the victim while he was in the process of

6

repeatedly and violently punching the victim's head. Mrs. Lopez received extensive same-day medical treatment and still has permanent lingering effects from the assault. Without the self-defense of the victim, the interference of her sister, and the prompt and extensive medical treatment, the victim would have incurred serious bodily injury. The violent and repeated blows to the victim's head by the Defendant upon Mrs. Lopez, whose physical characteristics could be evaluated by the jury, along with the fact that the attack had to be forcibly stopped, are sufficient to support the jury verdict that the Defendant had the intent to inflict serious bodily injury on Mrs. Lopez. *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super 2010).

Accordingly, this court is convinced that the record provides sufficient evidence when viewed in the light most favorable to the Commonwealth from which the jury found beyond a reasonable doubt that Emoc Lopez committed the offense of aggravated assault.

BY THE COURT:

_____
ROYCE L. MORRIS, JUDGE

DISTRIBUTION: 7-8-21 @ 9:31 Am
Landa Porter, Esquire, Deputy District Attorney, 101 Market Street, Harrisburg PA 17101 IO
Spencer H. C. Bradley, Esq., Assistant Public Defender, 2 South Second Street, 2nd Floor, Harrisburg PA 17101 IO
Court Administration IO
FILE

7